May it please the Court, Cal Potter, on behalf of Robert Panaro, the appellate in this action. Knowing that the Court is familiar with the facts of this case, I'd like to focus on why the case should be remanded for trial on the civil rights claims. We have recently brought forward to the Court the additional citation of Viet Mike Ingo, 403 F. 3rd. 620. Pursuant to this Court's holding in that particular case, Mr. Panaro was procedurally defaulted when the defendants raised his failure to exhaust his claim pursuant to the Prison Litigation Reform Act. At the time in which this occurred, Mr. Panaro was a pretrial detainee in the federal system, being housed in the N. Las Vegas Correctional Facility pursuant to a contract. The case went through almost two and a half, three years of litigation before the defendants raised the issue in a summary judgment as to the fact that there was a failure to exhaust. I don't see why that's a problem when you've got an intervening change in the law, which, I mean, before they raised the issue, couldn't raise it because damages actions weren't subject to exhaustion, whereas after Booth, they were. And the difficulty is that at the time that we filed the action, we were trying to get medical treatment for Mr. Panaro, and there wasn't any exhaustion requirements, nor was it brought forward. So what we have here is we're being penalized for taking what was action to benefit an individual who had been sadistically and maliciously beaten by a correctional officer, Hollins. And the facts show that, in fact, he not only was asking for his grievance because he wanted a change of linen, and he was beaten. Hollins went in violating their own policies. He initially said he was going in to do a cell extraction. But the problem for our jurisdiction on the claim is that after the beating or the brutality, he didn't file a grievance in the internal system. And the statute that governs prisoner civil rights litigation seems to require us not to consider a case where the prisoner doesn't exhaust an internal procedure. He did exhaust, and that's part of the argument. He filed the grievance, and, in fact, the individual was they went through an internal affairs. He testified. I know there was an internal affairs. There was an internal affairs investigation. He testified in it. But he didn't present a claim, the claim he's presenting in the civil rights suit in the internal procedure. He didn't preserve or he didn't file a grievance procedure for money damages. He filed a grievance procedure, and initially that's what this was all about. The grievances were stuck down his shirt. He ultimately filed a grievance, and he won. That's a different incident. That had to do with the towel. This case has to do with his getting the altercation. Well, the getting the towel as a result of asking to get the towel is when he was beaten. He was beaten on two occasions. I understand, but he's not grieved the altercation. That's the problem. No. He grieved the altercation and then testified. There's no evidence in the record on summary judgment ruling of any grievance with respect to the altercation. And then that's why we go then to this Ingo case where we're talking about exhaustion. He did file a grievance, but he didn't exhaust as part of the argument. That's what the district court found. So the argument is he's procedurally defaulted. And as long as he did under this particular case. No, no, no. I mean, here's the problem. He did not file a grievance with respect to the altercation. That is part of the summary judgment record. You threw in a piece of paper in connection with your request for leave to amend that may or may not be a grievance. But that's not part of the summary judgment record. The summary judgment record does not show any grievance, does it, in connection with the altercation? What the summary judgment record showed at the time was that as a pretrial detainee, he was trying to get medical treatment and that we filed believing that he had been beaten and that it wasn't an issue because it wasn't a condition issue. And that's what the record was at the time of the summary judgment. But the court made a ruling that he had not exhausted at that point in time. And our position is, based upon the recent case here in the Ninth Circuit, that that is an exhaustion issue and, therefore, we were procedurally defaulted just as that other inmate was and that we should have the opportunity because it's not a frivolous claim. It's not a claim that was brought forward. In fact, the officer was sanctioned for his conduct. And based upon that, the PLRA is trying to ferret out claims that weren't substantial or weren't constitutional violations. I don't think anyone's suggesting it's a frivolous claim. But the problem that I'm having is that the PLRA provision on exhaustion is not simply trying to screen off frivolous claims. It's also trying to say that courts shouldn't be involved to the extent there's an administrative procedure in the prison system that should look at things first. Right. And what you had here, not only did you have the prison system or the jail in this instance look at all the claims, but you had the chief himself involved in making the determinations. Could I ask you this? At any point in the system did he ask for money damages? Not until he got into court. But the reason that we got into court was because we were trying to get him medical attention. Oh, I understand that. The claim was filed almost a month after the incident took place because he wasn't getting medical treatment. And I would submit that that's an exception that's totally unique to even these other cases that are cited. Can you tell me where it is you were trying to get medical treatment? Yeah. It's in his testimony. Yeah, but in the complaint. No, I understand. And what they had was actually a bifurcated process over there. They contract out their medical treatment. We sued North Las Vegas, but they contract out their medical treatment. The complaint in this case does not seek medical treatment. It seeks damages on account of injuries that he got. That's correct. But his testimony, his testimony that was at the time before any of these motions were filed, at 257 in the record, was that he was trying to get medical treatment. And they had asked his criminal attorneys as well as bringing forward what he talked about as kites or grievances in trying to get the medical treatment. Okay. Thank you. We've got some time left. We'll come back to you, Mr. Weiss. May it please the Court, Todd Weiss, on behalf of the appellees. What about the fact that these issues seem to have been hashed out in the internal affairs investigation? Why shouldn't that be sufficient to satisfy the PLRA? It shouldn't be sufficient because the purpose of the PLRA is it sets forth a specific criteria. The fact that someone conducts an internal investigation, that's controlled by the staff. That's not necessarily controlled by the inmate. The inmate themselves are the ones that have the burden, and I acknowledge that it's a burden, of initiating the process. And they must initiate the process by filing a grievance of a form that the city or whatever corrections facility that they are currently incarcerated in applies, which did not happen here. Yes, it was investigated by the Internal Affairs Committee, and it was investigated by the chief. That is all true. I don't dispute that. But at the end of the day, the prisoner here knew what the procedures were and didn't follow them. And at the time, I'm not a criticism of his counsel because at the time, the law was that he didn't have to. The law in this circuit was that he didn't have to. As long as he was just seeking money damages, he didn't have to file a grievance. That's why he didn't file a grievance. It wasn't because he just overlooked it or whatever. He intentionally didn't file a grievance because the law prior to Booth in the Ninth Circuit was he didn't have to. So after this suit was filed, the law changed by the U.S. Supreme Court. The U.S. Supreme Court said the Ninth Circuit or this circuit and a few other circuits were wrong on that and that it did apply to claims for money damages. Once Booth was decided, could he have filed a grievance at that time or was it too late in the prison system? My belief would be is that it would be untimely. Now, whether or not they would have accepted it anyway, I don't know. But I apologize. I just cannot remember the date of Booth. I believe it was 2002. I can look. But I suppose if he had filed it after Booth and it was not accepted, then that would have been an excuse that he didn't know and so forth would have gone on from that point. I'm sorry, Your Honor. I think if he had filed it after Booth and it was not accepted, then it might have been excused by us because he didn't know any more than you did. If he had filed it after Booth and it was not accepted, then it might have gone on from   that point, if so. Well, that I suppose is a possibility. But what ‑‑ if you look at even the recent decision that my colleague relies upon from this circuit, the Woodford decision, I would only note for the record is that my understanding is on Monday CERT was granted on this case because there is a split amongst the circuits about whether or not the PLRA provides for procedural default. I believe the Ninth Circuit and the Sixth Circuit have held that it does not, but I believe the Seventh, Tenth, Eleventh, and I think the Third have held that it does. Setting that aside, even under that case, and, Judge Noonan, this comes to the point you were just raising. The panel, Judge Pragerson's opinion in the Woodford case, he specifically notes this exact issue, because in that case what happened was the inmate didn't file within the time frame, but at least he filed. He was 15 days late, but he filed. And then he appealed their ‑‑ they refused to consider his grievance because it was untimely. And he appealed that through all the steps, and that was a critical point to the panel of this Court. And I have, and I apologize, it's such a new opinion that I only have the Westlaw version on. No, I do not. I apologize. It's at page 629. What Judge Pragerson's opinion provides for is that even assuming that an inmate wished to skip prison's grievance system in order to quickly get into district court, the inmate still must submit his untimely grievance to the prison and appeal all denials of his claims completely through the prison's administrative process to satisfy the PLRA's exhaustion requirement. And so even under this Court's precedent, which says that there is no procedural default, this particular case involving this particular litigant, he never filed a grievance at all. That's where I do disagree with my colleague on what the record provides. He didn't file one at all. And he didn't file one at all because this was prior to Booth, and he, in his view, he didn't have to. But he didn't file one after Booth either. That's right. He didn't file one after Booth either. And that --- I'm not quite sure what difference it makes why he did what he did or didn't do. I mean, the point is he didn't. Your Honor, I have to agree with you on that.  This is a case that we're here debating whether summary judgment was appropriately granted on a Section 1983 claim when the same essential claim under State law, i.e., State law battery, went to a full jury trial, and the jury concluded that the inmate had not been battered by the guard. Well, with that issue, you know, that's not really a good thing. If there were jurisdiction to litigate this in a civil rights case, you'd have issues of collateral estoppel or you might have some issues there. But it's like the issue before us is just whether the suit could proceed under the PLRA, I think. Well, I understand what you're saying. But as we did cite in our brief, we believe that there is authority at the court of appeals level that have addressed this question on ruling whether or not dismissal of Section 1983 claims were appropriate. And the courts of appeals have said, well, listen, if the State law claim went to the jury trial and the government prevailed, i.e., the inmate had not been beaten, then the elements of the claims are the same. So any error of the district court was harmless error because the elements of the claim are the same. A civil rights action saying that I was unlawfully beaten by a guard under Section 1983 is the same as a State law claim for battery. And in this particular case ---- I understand that argument, but it just seems to me we never get to that argument if we don't have jurisdiction under the PLRA. I have to agree with you on that. I would think you wouldn't be trying to talk us ---- I am not trying to talk you out of that position. That is obviously our backup position. Our position is we believe that Judge Proulx got it right. And even under the recent decision from this Court, the court still got it right because in this particular case the inmate did not file a grievance at all. Okay. Thank you. Thank you. Mr. Potter. I would just point out that at the time when the motion for summary judgment raised the issue after Booth, Mr. Pinaro, as a pretrial detainee at that point in time, had already been found guilty and was no longer in the North Las Vegas Detention Center, was in Boron under the Bureau of Prisons. He could not have filed that type of exhaustive action at that point in time because he simply wasn't there in the North Las Vegas facility. Why couldn't he have filed a claim for damages even though he's no longer there? Well, because he's not an inmate. He had no standing to bring anything in terms of their internal grievance procedure. And I would submit that although it wasn't litigated, they have never settled one of these in a grievance procedure anyway. And the issue is whether you give them an opportunity to look at the claim, which they did. They took the necessary action. In fact, Mr. Pinaro testified in the hearing. And more importantly, none of these issues were raised as a motion to dismiss. The litigation went on for almost ---- The issue of whether the internal investigation would suffice wasn't raised in the district court either. Right? I'm sorry? The issue of whether the internal investigation suffices for exhaustion was not raised in the district court either. The issue that was raised initially, Your Honor, was dealing with the fact that he didn't have to do an exhaustion because under the existing case law, he didn't have to do an exhaustion. It wasn't until the case came down. I guess my point is since we're talking about what issues were and weren't raised, the internal grievance issue wasn't raised either. So it's waived. It was raised at the time of the motion to amend. But not in opposition to the motion for summary judgment, right? Correct. We brought it forward in terms of the issue. And the same argument is that it should be a situation where he had that ability to raise it and he didn't in terms of the motion to amend, that that should be the issue because the law changed and he shouldn't be penalized. Well, there's no appeal with respect to the leave to amend, is there? I believe it is within the ---- of the appeal. But the other issue is in terms of the existing case law under Wendell v. Asher, there was no motion to dismiss brought forward by the defendants to dismiss the case. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: Noonan, Rymer, Gould